**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| DAVID ULERY, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| AT&T MOBILITY SERVICES, LLC | ) ) ) ) |
| Defendant. | ) ) |

Case No. 20-cv-02354-WJM-KMT

Judge: William J. Martinez

Magistrate Judge: Kathleen M. Tafoya

### DEFENDANT AT&T MOBILITY SERVICES, LLC'S MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) OR IN THE ALTERNATIVE TO STAY

### MOTION

For the reasons set forth in the below memorandum, AT&T Mobility Services, LLC ("AT&T") respectfully requests that the Complaint be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, AT&T requests that the case be stayed pending Supreme Court's decision in *Facebook, Inc. v. Duguid,* Case No. 19-511.

As required by the Court's standing order, AT&T met and conferred with Plaintiff regarding the contents of this motion starting in its initial case conference on October 7, 2020, and continuing via email on November 2, 2020. However, Plaintiff did not agree to either withdraw or stay the case as requested in the motion and has not proposed any possible amendment for defendant to consider that might resolve the issues raised by the motion.

1

## MEMORANDUM

David Ulery ("Ulery") alleges that AT&T violated the Telephone Consumer Protection Act ("TCPA") by sending texts to his cellular telephone reminding him of the COVID-19 protocols for his job at an AT&T store, after he allegedly quit that job and revoked any consent to be called. However, the TCPA does not prohibit all texts to a cellular telephone number, even if the texts are sent without consent. Instead, only texts sent using an "automatic telephone dialing system" ("ATDS") are barred. The definition of an ATDS requires equipment to have the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" to fall within the TCPA's scope. But Ulery claims only that he received messages directed to a list of AT&T employees, not to numbers generated randomly or sequentially, and thus he does not state a claim.

However, despite the statutory limitations, the question of whether equipment that dials numbers automatically from a list can be an ATDS has split the circuits. The Supreme Court recently granted certiorari in the case of *Facebook, Inc. v Duguid,* to resolve the circuit split. Case No. 19-511. The case is calendared for oral argument on December 8, 2020, with a decision expected during the current Supreme Court term. Ex. A. Because that decision will likely prove dispositive of the issues raised in this motion, AT&T respectfully requests the Court stay the case pending the decision in the *Duguid* matter should it not dismiss the case outright.

## ALLEGATIONS

2

Ulery claims he worked as an AT&T customer service representative at a store in Pueblo between April 2020 and June 5, 2020.[1] Comp. ¶ 21. Despite leaving his job in June, Ulery alleges that he received a text message from AT&T on his cellular telephone number on or about July 23, 2020. *Id.* at ¶ 22. That message reminded employees not to come into work if they experienced symptoms of COVID-19 or had recently been exposed to anyone with COVID-19. *Id.* at ¶ 23. Ulery claims he responded on July 23, 2020, by texting "STOP", and thus informed AT&T that he no longer wished to receive messages targeted at employees. *Id.* at ¶ 24.

Ulery alleges that he nevertheless received the same message every night over the next two weeks, until August 7, 2020. *Id.* at ¶ 27. On July 29, 2020, Ulery claims that he again tried to stop receiving messages targeted at AT&T employees via a "STOP" text. *Id.* at ¶ 25. But Ulery alleges that the STOP text did not succeed and he continued to receive messages. *Id.* at ¶ 27.

According to Ulery, these COVID-19 safety messages violated 47 U.S.C. § 227(b)(1)(A)(iii). *Id.* at ¶ 38. That provision of the TCPA makes it unlawful to "to make any call[[2]] (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and (B) to dial such numbers." *Id.* at § 227(a)(1) (emphasis added).

---

[1] In setting forth the facts alleged, AT&T assumes (as it must for purposes of this motion) that the facts are true. Should the case proceed, AT&T reserves the right to deny the validity of any of the facts as appropriate.

[2] For purposes of this motion, DIRECTV is not challenging whether text messages are covered by the TCPA.

Ulery alleges that AT&T sends these messages as "bulk text messaging" "en masse" to their employees. Comp. ¶¶ 19, 44. He further claims "on information and belief" that the "equipment used to text him has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator"[3] and can dial without human intervention. *Id.* at ¶¶ 39, 40. Ulery further asserts that the "impersonal and generic nature" of the messages demonstrates the use of an ATDS. *Id.* at ¶ 42. Finally, Ulery claims that the fact no human being responded to his STOP message shows an ATDS was used. *Id.* at ¶ 43.

## STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## ARGUMENT

### A. Ulery Has Not Plausibly Alleged That He Received Texts From An ATDS.

#### 1. Only Texts From An ATDS Violate The TCPA.

"Statutory interpretation . . . begins with the text[.]" *Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016); *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990). The

---

[3] This allegation simply mirrors the statutory definition of an ATDS

TCPA does not ban all calls to cellular telephones placed without consent—just calls made using a prerecorded voice (which is plainly inapplicable in the context of the text messages Ulery claims to have received) or an ATDS. 47 U.S.C. § 227(b)(1)(A)(iii). By statute, an ATDS means equipment that has "the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Thus, "a device constitutes an ATDS if it has the capacity to perform both of two enumerated functions: 'to store or produce telephone numbers, to be called using a random or sequential number generator,' and 'to dial such numbers.'" *ACA International v. FCC,* 885 F.3d 687,701 (D.C. Cir. 2018).

Critical to the resolution of this case, then, is whether equipment that dials only from a preexisting list of numbers (such as a list of AT&T's retail employees) can constitute an ATDS. The circuits have split on the question, but the Tenth Circuit has not addressed it. *Compare Gadelhak v. AT&T Services, Inc.,* 950 F.3d 458 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Company,* 948 F.3d 1301 (11th Cir. 2020); *Dominguez v. Yahoo Inc.!,* 894 F.3d 116, 199 (3rd Cir. 2018) *with Marks v. Crunch San Diego,* 904 F.3d 1041 (9th Cir. 2018); *Duran v. La Boom Disco Inc.,* 955 F.3d 279, (2nd Cir. 2020); *Allan v. Pennsylvania Higher Education Assistance Agency,* 968 F.3d 567 (6th Cir. 2020). The split hinges on what portion of the definition of an ATDS the phrase "using a random or sequential number generator" modifies— just the verb "produce," both verbs ("store" and "produce") or something else entirely. An analysis of the statute and the relevant opinions, however, shows that the Third, Seventh, and

Eleventh Circuits have the better of the argument, that the phrase modifies both verbs, and thus list-based dialing cannot be subject to liability under 47 U.S.C. § 227(b)(1)(A)(iii).[4]

### 2. Applying The Rules of Grammar to the Statute's Plain Language Shows That Equipment That Only Dials From A List Is Not An ATDS.

"In determining the meaning of a statutory provision, we look first to its language, giving the words used their ordinary meaning." *Artis v. D.C.*, 138 S. Ct. 594, 603 (2018). Where "the statute's language is plain" the analysis should begin "with the language of the statute itself, and that is also where the inquiry should end." *Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016).

Here, the plain meaning of the statute, informed by basic rules of punctuation and grammar, permits only one interpretation. As noted above, the critical language is the TCPA's definition of an ATDS, which covers equipment with the capacity:

> (A) to store or produce telephone numbers to be called, ***using a random or sequential number generator***; and
>
> (B) to dial such numbers.

47 U.S.C. § 227(a)(1) (emphasis added).

In assessing this language, punctuation matters. The Supreme Court has explained that a statute's meaning "will typically heed the commands of its punctuation." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993). The placement of the comma answers how to interpret the key text—"to store or produce telephone numbers to be called, using a random or sequential number generator." This passage has a parallel structure: two

---

[4] In the *Facebook* case currently pending before the Supreme Court, the United States has taken the position that the Supreme Court should adopt the interpretation of the definition of an ATDS promulgated by these three circuits. *See Facebook Inc. v. Duguid: Brief of United States as Respondent Supporting Petitioner,* 2020 WL 5439453 (Sept. 4, 2020).

linked verbs ("store *or* produce") that share a common object ("numbers to be called"), and a dependent modifier ("using a random or sequential number generator") set off by a comma.

These principles of grammar align with well-established rules of statutory interpretation. The Supreme Court has explained that, when interpreting modifiers set off by commas, "the most natural way to view the modifier is as applying to the entire preceding clause." *Cyan, Inc. v. Beaver Cnty Emps. Ret. Fund,* 138 S. Ct. 1061, 1077 (2018). Numerous courts of appeals similarly recognize that the "use of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to ***all*** of the previous phrases *and not merely the immediately preceding phrase.*" *Elliot Coal Mining Co. v. Dir., Office of Workers' Comp. Programs,* 17 F.3d 616, 630 (3d Cir. 1994) (emphasis added); *accord Bingham, Ltd. v. United States,* 724 F.2d 921, 925-26 n.3 (11th Cir. 1984) (same); *see also, e.g., Am. Int'l Grp. Inc. v. Bank of Am. Corp.,* 712 F.3d 775, 782 (2d Cir. 2013) ("When a comma is included . . . the modifier is generally understood to apply to the entire series."); *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.,* 509 F.3d 216, 223 (5th Cir. 2007) (when "there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this suggests that the modification applies to the whole list and not only the last item.").

Ordinary principles of style and usage also confirm this point. "When a dependent clause precedes the main, independent clause, it should be followed by a comma." *The Chicago Manual of Style* § 6.24 (17th ed. 2017). Here, the phrase "to store or produce telephone numbers to be called" is dependent on the clause "using a random or sequential number generator," and the term "using a random or sequential number generator" thus modifies the phrase "telephone numbers to be called" (and, by extension, both verbs in the statute, to store and to produce).

7

The better reasoned appellate decision thus have found that to constitute an ATDS, a system must have the capacity to either (i) produce telephone numbers randomly or sequentially on its own, and then dial them; or (ii) store telephone numbers that have been generated randomly or sequentially and then dial them later. For example, in *Gadelhak,* Judge Coney Barrett, writing for a unanimous panel, settled on an interpretation under which the phrase "using a random or sequential number generator" modified both "to store" and "to produce." 950 F.3d at 465, 467-68. Likewise, in *Glaser,* the Eleventh Circuit relied on rules of grammar that state that "[w]hen two conjoined verbs . . .share a direct object . . . a modifier following that object . . .customarily modifies both verbs." 948 F.3d at 1306. Numerous other courts have adopted a similar approach. *See e.g., Dominguez,* 894 F.3d at 121 ("those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation"); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 938, 939 (N.D. Ill 2018); *Thompson-Harbach v. USAA Fed. Savings Bank,* 359 F. Supp. 3d 606, 624 (N.D. Iowa 2019). The Court should reach the same conclusion here.

It is true that some other courts have adopted a more expansive reading of the definition of an ATDS, including the Ninth and Sixth Circuits. Thus, in *Marks* the Ninth Circuit held that the phrase "using a random or sequential number generator" does not modify the verb "store," and thus the ATDS definition encompasses all equipment that has the capacity to store any list of numbers (no matter how the numbers were generated) and then dial them automatically. 904 F.3d at 1051. The Sixth Circuit likewise adopted this approach in *Allan.* 968 F.3d at 574-75.

However "the *Marks* court's decision [is] erroneous as a matter of statutory construction" because it would require "[r]earranging the text" of the statute, *Thompson-Harbach*, 359 F.

8

Supp. 3d at 624, 626, to instead "provide that the term [ATDS] means equipment which has the capacity (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks*, 904 F.3d at 1053. In other words, the Ninth Circuit determined that the "using a random or sequential number generator" modifier should apply only to the numbers that are the object of the second verb "produce," and not the numbers that are the object of the first verb "store." But this approach "asks [the Court] to reorder the sentence to separate 'store' and 'produce' but to clarify that 'telephone numbers' is the object of both. That would be a significant judicial rewrite." *Gadelhak,* 950 F.3d at 466.

Moreover, that expansive construction is impossible to square with the D.C. Circuit's recent decision invalidating the FCC's interpretation of the definition of an ATDS decision in *ACA International*. In that case, the D.C. Circuit acted on consolidated petitions challenging the validity of several aspects of an omnibus FCC order interpreting the TCPA. Among other things, the D.C. Circuit rejected and "set aside"—*i.e.*, invalidated—the FCC's determination that in assessing whether equipment has the "capacity" to "store or produce telephone numbers to be called, using a random or sequential number generator," the "'capacity' of calling equipment 'includes its potential functionalities' or 'future possibility,' not just its 'present ability.'" *ACA Int'l*, 885 F.3d at 695, 703.

The court reasoned that if a device has the "capacity" to be an ATDS based only on potential functionality "that could be added through app downloads and software additions, and if smartphone apps can introduce ATDS functionality into the device, it follows that ***all smartphones***" are an ATDS. *Id*. at 697 (emphasis added). That, in turn, would mean that "every

9

smartphone user violates federal law whenever she makes a call or sends a text message without advance consent." *ACA Int'l*, 885 F.3d at 697.

For that reason, the D.C. Circuit held that the FCC's interpretation of "capacity" was "unreasonably, and impermissibly, expansive"—because "[n]othing in the TCPA countenances concluding that Congress could have contemplated" that the TCPA's restrictions would apply "to the most commonplace phone device used every day by the overwhelming majority of Americans." *Id*. at 699-700. Put simply, the D.C. Circuit explained, any interpretation of the TCPA that would result in treating smartphones as an ATDS "is utterly unreasonable." *Id*. at 699 (quotation marks and citation omitted). But the *Marks* court's broad interpretation similarly would encompass even the most common smartphones on the market (which—even without modification through the use of "app downloads and software additions" (*ACA Int'l*, 885 F.3d at 696-697)—can readily store numbers to be called in their contact lists and can dial or text those numbers). The *Marks* approach to an ATDS thus gives the statute exactly the "eye-popping" sweep that concerned the D.C. Circuit in *ACA International* and cannot be correct.[5]

### 3. Excluding List-Based Dialing Systems From the Definition of an ATDS is Consistent With the TCPA's Legislative History

Moreover, the interpretation of the definition of an ATDS adopted in *Gadelhak* and *Glaser* is supported by the TCPA's legislative history, as well as its structure.

---

[5] Indeed, after *Marks* was decided, the FCC issued a public notice pointing out that *ACA International* "held that the TCPA unambiguously foreclosed any interpretation that 'would appear to subject ordinary calls from any conventional smartphone to the Act's coverage.'" Public Notice, *Consumer & Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision* (Oct. 3, 2018), https://docs.fcc.gov/public/attachments/DA-18-1014A1.pdf, at p. 2.

When Congress first enacted the TCPA, most people used residential telephone landlines, not cellular phones, as their primary form of communication. *See Hearing Before the Subcomm. of Commc'ns of the S. Comm. On Commerce, Science, & Transp.*, 102d Cong. 45 (1991) (statement of Thomas Stroup) (only six million wireless subscribers nationwide in 1991). Congress thus naturally focused on protecting those landline consumers when drafting the law. In addition to the provision at issue, the TCPA thus contains two major provisions limiting telemarketing to landlines. *First,* companies generally cannot make prerecorded marketing calls to residential telephone lines without the express consent of the called party. 47 U.S.C. § 227(b)(1)(B). *Second,* the law establishes the regulatory framework for the national Do-Not-Call list, which provides consumers an opportunity to opt out of non-prerecorded marketing to their residential numbers. 47 U.S.C. § 227(c)(1)-(3).

Congress also recognized that some other types of telecommunications users (such as hospital or emergency lines, pagers, and cellular telephones) posed special problems when reached by a machine using random or sequential number generation. In particular, if those lines were dialed at random, they could be unavailable in an emergency or lead to expensive charges to their users. The House Report on the bill makes clear that the concern of tying up lines through random or sequential dialing (and not some broader intention to ban automatic dialing to cell phones) spurred Congress to enact § 227(b)(1)(A):

> In recent years a growing number of telemarketers have begun using automatic dialing systems to increase their number of customer contacts. The Committee record indicates that these systems are used to make millions of calls every day. Each system has the capacity to automatically dial as many as 1,000 phones per day. *Telemarketers often program their systems to dial sequential blocks of telephone numbers, which have included those of*

11

> *emergency and public service organizations, as well as unlisted telephone numbers.*

H.R. Rep. No. 102-317 at 10 (emphasis added).

### 4. Ulery Has Not Plausibly Pled That An ATDS Was Used To Call Him.

Nothing in the Complaint plausibly indicates that Ulery received texts sent from an ATDS as defined by the statute. While Ulery alleges some facts (such as that the message were sent *en masse* (Comp. ¶ 44) and that no human being responded to his messages (Comp. ¶ 43)) that might show that the equipment used to call him lacks human intervention, those facts are irrelevant to the key *statutory* feature of an ATDS—its capacity to generate numbers randomly or sequentially. To the contrary, the only reasonable inference that can be drawn from the Complaint's allegations is that the COVID-19 texts were targeted at specific lists of AT&T employees and not to telephone numbers generated randomly or sequentially. In particular, the quoted messages contains specific health reminders for AT&T employees, which makes sense only if sent to a list of AT&T employee contact numbers, and Ulery allegedly received the message because he had recently been an AT&T employee, not because he was contacted randomly. *Id.* at ¶ 21.

Moreover, while courts in this district have in the past given plaintiffs some latitude in pleading the elements of an ATDS, (*Geraci v. Red Robin Int'l,* 2020 WL 1443597, at *2 (D. Colo. Mar. 25, 2020)), they have nevertheless retained the fundamental rule that allegations cannot merely recite the elements of a cause of action to state a claim under *Twombly. Maree v. Wyndham Vacation Resorts,* 2019 WL 10250697, at *2 (D. Colo. July 17, 2019). Ulery's unsupported allegation (Comp. ¶ 39) that "[u]pon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential

number generator" thus gets him no closer to stating a claim, since it merely parrots the statutory elements of an ATDS.

### B. In The Alternative, The Court Should Stay This Matter Pending The Supreme Court's Decision In The *Facebook* Case.

As described *supra,* the central question presented here (whether a system that dials from a list constitutes an ATDS) is currently under review by the Supreme Court. Oral argument is scheduled for early December, and there is no reason to believe a decision will not issue by the end of this Supreme Court term at the latest. Should the Court elect not to dismiss Plaintiff's complaint at this time, a stay pending the Supreme Court's decision in *Facebook* would best serve judicial economy and the interests of the parties.

A district court has discretionary power to stay proceedings as part of its inherent ability to control its own docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The party requesting the stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). In this district, courts generally consider a variety of factors in assessing whether to grant a *Landis* stay, including: "(1) plaintiff's interest in proceeding expeditiously, and the prejudice to plaintiff of a delay; (2) the burden on defendants; (3) the convenience of the court; (4) the interests of nonparties in resolution of the case; and (5) the public interest." *Hawg Tools LLC v. Newsco Int'l Energy Services, Inc.,* 2015 WL 1087051, at *1 (D. Colo. Mar. 9, 2015).

These factors counsel in favor of a stay here. Any prejudice to the plaintiff as a result of a stay is small, in light of the short time frame before any expected Supreme Court decision. In contrast, the burden on defendant should a stay not be granted would be significant. In the months before the Supreme Court rules, AT&T will otherwise need to engage in costly class discovery and potentially even move for summary judgment. These burdens are heightened here

because AT&T has a considerable likelihood of success on the merits. Three circuits have already accepted the interpretation of an ATDS that AT&T argues for in this motion, and the United States government has even urged the Supreme Court to accept that interpretation. *See* discussion *supra* at n.4.

The Court too would benefit from the stay. Should the Supreme Court adopt a different interpretation of the TCPA than the Court here, the Court would need to decide the same motion twice. That duplication of effort can be easily avoided by simply staying the case. Finally, nothing in the Complaint indicates that there is any substantial interest of a non-party or the public that might justify denying a stay. To the contrary, courts have recognized that avoiding unnecessary litigation and conflicts in legal rules benefits the public and weighs *in favor* of a stay. *Hawg Tools,* 2015 WL 1087051 at *2.

## **CONCLUSION**

For the reasons stated above, the Complaint should be dismissed without leave to amend for failure to state a claim. In the alternative, the Court should stay the case pending the Supreme Court's decision in *Facebook, Inc. v. Duguid,* Case No. 19-511.

Dated: November 5, 2020             MAYER BROWN LLP

                                        */s/ Kyle J. Steinmetz*

                                   Kyle J Steinmetz
                                   MAYER BROWN LLP
                                   71 S. Wacker Drive
                                   Chicago IL 60606
                                   Telephone: (312) 701-8547
                                   Facsmilie: (312) 706-9178
                                   ksteinmetz@mayerbrown.com

                                   Douglas A. Smith, No. 52017

MAYER BROWN LLP
350 S. Grand Avenue, Suite 2500
Los Angeles, California 90071-1503
Telephone: (213) 229-5198
Facsimile: (213) 625-0248
dougsmith@mayerbrown.com

*Attorneys for Defendant AT&T Mobility Services, LLC*

15

## CERTIFICATE OF SERVICE

I, Kyle J. Steinmetz, an attorney do hereby certify that I caused a copy of the foregoing to be served on counsel of record via the ECF system on November 5, 2020.

/s/ Kyle J. Steinmetz